IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| PAUL N. KILGORE, III, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:13-CV-221-CLC-CHS ) |
| HYUNG CHAN KIM, SEAN KIM, and MIRAE, LLC | ) ) |
| Defendant. | ) |

REPORT and RECOMMENDATION

I. Introduction

Plaintiff Paul N. Kilgore, III ("Plaintiff") moves for attorney fees and costs pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA) [Doc. 80]. This motion is before the undersigned Magistrate Judge having been referred for a report and recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Plaintiff seeks $112,359.00 in attorney fees and $1,812.10 in costs. For the reasons stated herein, it is RECOMMENDED that Plaintiff's motion be GRANTED and Plaintiff be AWARDED $100,000.00 in attorney fees and $1,812.10 in costs.

II. Background

In this case, Plaintiff asserted an unpaid overtime wage claim under the FLSA and a separate FLSA retaliation case. On December 17, 2014, this Court granted Plaintiff's motion for partial summary judgment on the overtime wage claim and awarded Plaintiff damages in the total amount of $33,088.00 [Doc. 57]. Plaintiff's retaliation claim was tried before a jury beginning on January 27, 2015, and continuing through January 29, 2015. On January 29, 2015, the jury rendered a verdict in favor of Plaintiff in the amount of $49,475.00 [Doc. 76].

1

III. Discussion

Generally, federal courts in the United States follow the American Rule whereby each party bears his or her own attorney fees no matter what the outcome of the case. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 2 (1983); *Mihalik v. Pro Arts, Inc.*, 851 F.2d 790, 793 (6th Cir. 1988). An exception arises where a prevailing party has a statutory right to attorney fees. *See Hensley*, 461 U.S. at 433 n. 2 (discussing statutory exceptions to the American Rule).

The FLSA provides for an award of attorney fees and costs to a successful plaintiff. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant . . . "). The use of the word "shall" makes the award mandatory; however, the amount of fees awarded is at the court's discretion. *See Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994); *Farmer v. Ottawa Cnty.*, 211 F.3d 1268 (table), 2000 WL 420698, at *7 (6th Cir. Apr. 13, 2000). The purpose of the FLSA provision is to "insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and, as such, a court should not focus excessively on the amount of the plaintiff's recovery when determining a reasonable fee. *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 207 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984). Claims for attorney fees under the FLSA are analyzed using the same framework generally applicable to other federal fee shifting statutes. *See id.* at 502 (analyzing FLSA claim for attorney's fees pursuant to *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (addressing attorney fees awarded to a prevailing plaintiff pursuant to 42 U.S.C. § 1988)).

"'The primary concern in an attorney fee case is that the fee awarded be reasonable,' that

is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)); *Lavin v. Husted*, 764 F.3d 646, 649 (6th Cir. 2014) (same). A party seeking attorney fees under a federal fee shifting statute bears the burden to document the fees requested. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 617 (6th Cir. 2007); *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999). The award of attorney fees is left to the district court's exercise of discretion within the appropriate parameters, which are discussed below. *See Hensley*, 461 U.S. at 437; *Reed*, 179 F.3d at 469 n.2.

The methodology for calculating attorney fees under a fee shifting statute is set forth in *Hescott v. City of Saginaw*, 757 F.3d 518, 526-27 (6th Cir. 2014):

> A starting point is to calculate "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." (This is known as the "lodestar" calculation.) The court should then exclude excessive, redundant, or otherwise unnecessary hours. Next, the resulting sum should be adjusted to reflect the "result obtained." This involves two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"

(quoting *Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir.1994)). *See also, Hensley*, 461 U.S. at 433 (holding attorney fees for successful litigants under federal fee shifting statutes are calculated using the "lodestar" method of multiplying the number of hours reasonably expended by a reasonable hourly rate.) The reasonableness of the hours expended and the attorney's hourly rate must be considered on a case-by-case basis. *Hensley*, 461 U.S. at 429. There is a strong presumption that the amount of fees determined by the lodestar method is reasonable. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), *Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d

3

1392, 1401 (6th Cir. 1995).

When considering the second step in the methodology used to calculate fees, taking into account the results obtained by the prevailing party, proportionality may be a factor. One type of proportionality is that between the number of claims upon which the plaintiff prevailed and the number of claims upon which the plaintiff did not prevail. Another is proportionality between the amount of attorney fees sought and the amount of damages awarded.

*Hensley* instructs that courts should not reduce fees simply because a plaintiff has not prevailed on all claims. 461 U.S. at 434-37; *Hescott v. City of Saginaw*, 757 F.3d 518, 527 (6th Cir. 2014) ("We have repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed.") (quoting *De ja Vu, Inc. v. Metro. Gov't of Nashville & Davidson Cnty, Tenn.*, 421 F.3d 417, 423 (6th Cir. 2005); *Green Party of Tennessee v. Hargett*, 767 F.3d 533, 553 (6th Cir. 2014) ("In no case should a court reduce the full fee award 'simply by using a ratio of successful claims to claims raised.'") (quoting *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 822 (6th Cir. 2013)).

Rather, the court should consider whether work performed for one or more unsuccessful claims can also apply to successful claim(s). Where a plaintiff's claims involve "a common core of facts" or are based on "related legal theories, . . . [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435; *see also, Jordan v. City of Cleveland*, 464 F.3d 584, 603 (6th Cir. 2006) (" . . . when claims 'involve a common core of facts' or are 'based on related legal theories,' the district court's rejection of certain grounds is not a sufficient reason for reducing a fee. There is no precise test for determining whether claims are related") (quoting *Hensley*, 461 U.S. at 437)); *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1169 (6th Cir.

1996) ("When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced.")

The second type of proportionality concerns the ratio between damages awarded and fees sought. Where the purpose of the litigation is to recover damages, then the district court must consider the amount and nature of damages awarded when determining attorney fees. *Farrar v. Hobby*, 506 U.S. 103, 114-115 (1992) (citing *Hensley*, 461 U.S. at 436); *see also Cramblit v. Fikse*, 33 F.3d 633, 635 (6th Cir. 1994). "[D]istrict courts should exercise their equitable discretion in such cases [where plaintiffs have had only partial success] to arrive at a reasonable fee award, either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 789-90 (1989); *see also*, *Hensley*, 461 U.S. at ("the district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.")

It is also important to observe, however, that, "[i]n the civil rights area there is no requirement that the amount of an award of attorney's fees be proportional to the amount of the underlying damages." *Grandview Raceway*, 46 F.3d at 1401 (citing *City of Riverside v. Rivera*, 477 U.S. 561 (1986) (upholding an award of attorney fees pursuant to 42 U.S.C. § 1988 for $245,456.25 where the underlying damages award was $33,350)). The Sixth Circuit reasoned in *Hescott v. City of Saginaw*, 757 F.3d 518, 525 (6th Cir. 2014),

> … [a]s the Supreme Court has explained, civil-rights plaintiffs "seek[ ] to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." [*Rivera,* 477 U.S.] at 574, 106 S.Ct. 2686. Therefore, "Congress enacted § 1988 specifically to enable plaintiffs to enforce the civil rights laws even where the amount of damages at stake would not otherwise make it feasible to do so." *Id.* at 577, 106 S.Ct. 2686. A rule that eliminates attorneys' fees in civil-

rights cases due to the size of the damages awarded "would seriously undermine Congress' purpose in enacting § 1988." *Id.* at 576, 106 S.Ct. 2686.

[Brackets added]; *accord, McHenry v. Chadwick*, 896 F.2d 184, 189 (6th Cir. 1990) (upholding award of attorney fees under § 1988 that were five times greater than the damages award because "the value of the rights vindicated goes beyond the actual monetary award and the amount of the actual award is not controlling"); *Clements v. Prudential Prot. Servs.,* LLC, 100 F. Supp.3d 604, 618 (E.D. Mich. 2015) (awarding $77,233.50 in attorney fees where plaintiff was awarded $31,000 in damages for FMLA claim); *Hoge v. Honda of America Mfg, Inc.*, 2003 WL 1338227 (S.D. Ohio Mar. 3, 2003) (unpublished) (awarding attorney fees of $18,212 where plaintiff was awarded $3,781 in damages for FMLA claim).[1]

Further, federal fee shifting statutes do not provide for enhancements of fees in order to compensate for the risk of nonpayment when an attorney takes a case on a contingency basis. *City of Burlington v. Dague*, 505 U.S. 557, 561-63 (1992); *Davis v. Mutual Life Ins. Co. of New York*, 6 F.3d 367, 381 (6th Cir. 1993).

It is also worth noting, that a court is not required to comb through the attorney fee documentation with a magnifying class. As the Supreme Court stated in *Fox v. Vice*, 563 U.S. 826, __; 131 S.Ct. 2205, 2216 (2011):

---

[1] Factors sometimes enumerated when determining the lodestar amount and any adjustments are: "(1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3 (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *Reed v. Rhodes*, 179 F.3d 453, 472 n.3 (citations omitted); *Clements*, 100 F. Supp.3d at 615.

6

> [w]e emphasize, as we have before, that the determination of fees "should not result in a second major litigation." *Hensley*, 461 U.S., at 437, 103 S.Ct. 1933. The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet "the burden of establishing entitlement to an award." *Ibid*. But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

Finally, "A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne v. Village of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994). In determining the appropriate hourly rate to apply, courts must consider the prevailing market rate in the relevant community for the same type of work at issue. *Adcock-Ladd v. Sec'y of the Treasury*, 227 F.3d 343, 350 (6th Cir. 2000); *Reed*, 179 F.3d at 473; *Waldo v. Consumers Energy Co.,* 726 F.3d 802, 822 (6th Cir. 2013). The "'relevant community' for fee purposes [is] the legal community within that court's territorial jurisdiction." *Adcock-Ladd*, 227 F.3d at 350, *Waldo*, 726 F.3d at 821. The "'prevailing market rate' is that rate which lawyers of comparable skill and experience can reasonably expect to command within" the relevant community. *Id.* That rate may not, however, exceed the amount necessary to cause competent legal counsel to perform the work required. *Coulter v. Tennessee*, 805 F.2d 146, 148-49 (6th Cir. 1986); *see also Adcock-Ladd*, 227 F.3d at 349 ("'The primary concern in an attorney fee case is that the fee awarded be reasonable,' that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.") (quoting *Reed*, 179 F.3d at 471). "Such fees are different from the prices charged well-to-do clients by the most noted lawyers and renowned law firms in a region. Under these statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate." *Coulter*, 804 F.2d at 149, *accord Reed*, 179 F. 3d

7

at 472.  In determining the correct hourly rate, a district court may "rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Waldo,* 726 F.3d at 821-22 (quoting *Van Horn v. Nationwide Prop. & Cas. Ins. Co.,* 436 Fed. Appx. 496, 499 (6th Cir.2011)).

In the instant case, Plaintiff's counsel, Frank Pinchak, charged $395.00 an hour and Doug Hamill charged $285.00.  Based on my own years of experience practicing law in Chattanooga and later serving as in-house counsel managing litigation and reviewing hundreds of detailed statements for services from outside lawyers, I find the hourly rate charged by Plaintiff's counsel, given their expertise and experience, to be reasonable.

Defendants argue that there were "appearance[s] of two or more people from the [law firm] at all hearings and trial in this matter when those tasks could have been handled by a single attorney."  They further argue that the senior attorney on the case should have delegated tasks to a junior attorney in order to charge a lower rate.  In this regard, the undersigned understands that Defendants also employed two attorneys to attend the jury trial, as well as various pre-trial proceedings.  It seems somewhat disingenuous for Defendants to argue that the Plaintiff should not be able to staff the prosecution of his claims as thoroughly as the Defendants are staffing the defense of such claims. Further, Defendants cite no authority requiring a senior attorney to delegate legal tasks to a junior attorney in order to reduce rates for appropriate work.  Indeed, a counter-argument exists that a senior attorney should be able to perform tasks more efficiently by virtue of his or her greater knowledge and experience.  The Court notes that, by investing additional attorney time in the preparation and trial of this lawsuit, Plaintiff's counsel placed at risk more of their own resources.  Had they not prevailed at trial, they would have received no fees whatsoever, and their fee "write-off" would have been all the more significant.

Consequently, I do not find the Defendants' arguments to be persuasive.

Finally, I have reviewed the hours worked by Plaintiffs' counsel and find them to be, in the main, quite reasonable for a case of this nature. However, I will recommend that the Court reduce the fees requested by a moderate amount in order to account for some narrative time entries which are vague, *e.g.*, "trial prep," or somewhat excessive.

In keeping with the Supreme Court's admonition in *Fox v. Vice*, 563 U.S. 826, __; 131 S.Ct. 2205, 2216 (2011), to "do rough justice, not to achieve auditing perfection," and to "use estimates in calculating and allocating an attorney's time," the Court finds that Plaintiffs' counsel's fees are, for the most part reasonable, but that some adjustment is appropriate. For all of the foregoing reasons, I recommend that the Plaintiffs' fees be reduced from $112,359.00 to $100,000.00, and that Plaintiff be awarded costs in the amount of $1,812.10 (which amount is uncontested).

## IV. Conclusion

For the reasons stated herein, it is RECOMMENDED that Plaintiff be AWARDED attorney fees in the amount of $100,000.00 and costs in the amount of $1,812.10.[2]

s/*Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).